**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TERRI G.,

                Plaintiff,

    v.                                    3:18-CV-0066
                                          (CFH)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____

APPEARANCES:                     OF COUNSEL:

LACHMAN & GORTON            PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.     SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION & ORDER</u>

      Currently before the Court,[1] in this Social Security action filed by Terri G.[2]

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

---

[1]  Parties consented to review of this matter by a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and N.D.N.Y. General Order 18.  Dkt. Nos. 8, 9.

[2]  In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 14.)  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I.  BACKGROUND

### A.  Facts

Plaintiff was born in 1988, making her 26 years old at the application date and 29 years old at the date of the ALJ's decision.  Plaintiff reported completing the tenth grade with a history of special education.  Plaintiff has no past relevant work.  At the initial level, Plaintiff alleged disability due to depression, posttraumatic stress disorder ("PTSD"), bipolar disorder, dysthymia, attention deficit hyperactivity disorder, scoliosis, and temporary insanity.

### B.  Procedural History

Plaintiff applied for Supplemental Security Income on September 29, 2014. Plaintiff's application was initially denied on December 10, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ John P. Ramos on March 7, 2017.  (T. 45-79.) [3]  On April 13, 2017,

---

of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify the plaintiff by her first name and last initial.

[3]      The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 12-28.) On November 17, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-5.)

## C.    The ALJ's Decision

First, the ALJ found that Plaintiff has not engaged in substantial activity since September 29, 2014, the application date. (T. 17.) Second, the ALJ found that Plaintiff's scoliosis, depression, and PTSD are severe impairments. (*Id.*) Third, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx 1. (T. 17-19.) In so finding, the ALJ considered Listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), and 12.15 (trauma- and stressor-related disorders). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work

> except she can only occasionally climb ladders/scaffolds, and she can only occasionally be exposed to concentrated humidity, wetness, dust, odors, fumes, pulmonary irritants, vibrations or temperature extremes. She should not work at unprotected heights or with moving mechanical parts. [She] should avoid balancing, kneeling, crouching and crawling, although she can perform occasional stooping. She retains the ability to understand and follow simple instructions and directions with regard to one or two-step tasks; perform simple or one or two-step tasks with supervision and independently; and maintain attention/concentration for one or two-step tasks. [She] can regularly attend to a routine and maintain a schedule. She should only have occasional, simple interaction with coworkers, and she should not have interaction with the public. [She] can have intermittent contact with supervisors throughout the workday.

3

(T. 20.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 23.)  Sixth, and lastly, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  (T. 23-24.)  The ALJ therefore concluded that Plaintiff is not disabled.

### D.  Arguments

#### 1.  Plaintiff's Arguments

First, Plaintiff argues the ALJ's conclusion that she can meet the exertional demands of light work is not supported by substantial evidence and that the ALJ improperly substituted his lay opinion for that of the undisputed opinion of consultative examiner Gilbert Jenouri, M.D.  (Dkt. No. 11, at 11-16 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues the ALJ's conclusion that Plaintiff can meet the walking and standing demands of light work and can occasionally stoop is not supported by substantial evidence and is the product of legal error.  (*Id.* at 11, 14-15.)  Plaintiff argues the ALJ improperly rejected Dr. Jenouri's opined standing, walking, and stooping limitations because "his single conclusory statement that there is ''little support in the record for such significant limitations'" does not provide sufficient explanation to permit meaningful judicial review.  (*Id.* at 11-13.)

Plaintiff also argues the ALJ impermissibly substituted his opinion for Dr. Jenouri's by failing to point to "other medical opinions that contradict or undercut Dr. Jenouri's opinions" and by rejecting the opined limitations" based only on the ALJ's own lay interpretation of the medical evidence."  (*Id.* at 13-14.)  Plaintiff contends that the ALJ's lay discussion of the medical evidence is not sufficiently compelling to overcome

4

a valid medical opinion, the ALJ does not discuss the medical evidence at all in this regard, and the ALJ's factual citations (Plaintiff walked to a consultative examination, and there was a lack of treatment by an orthopedic specialist, participation in physical therapy, or back surgery) are "irrelevant," "meaningless," or erroneous. (*Id.* at 15-16.)

Second, Plaintiff argues that the ALJ's psychiatric RFC determination is not supported by substantial evidence. (*Id.* at 16-21.) Specifically, Plaintiff argues that the ALJ erred in purporting to give great weight to consultative examiner Amanda Slowik, Psy.D's marked limitations in interacting with others, and concluding that these limitations were accounted for in the RFC. (*Id.* at 16-19.) Plaintiff contends that the ALJ failed to explain how a marked limitation in interacting with others equates to the ALJ's assessed limitations (occasional, simple interaction with coworkers and intermittent contact with supervisors) or enables Plaintiff to meet the basic mental demands of unskilled work. (*Id.* at 17-19.)

Plaintiff also argues the ALJ cited no medical opinion supporting the conclusion that Plaintiff can occasionally interact with coworkers and intermittently interact with supervisors and that, although the ALJ gave great weight to the opinion of non-examining consultant R. Nobel, Ph.D., this opinion cannot constitute substantial support for the ALJ's RFC. (*Id.* at 19.) Plaintiff contends Dr. Nobel failed to define his use of the term "moderate" in opining moderate limitations in the ability to accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* at 19-20.) Plaintiff posits that vague terms such as "moderate" do not provide substantial support for an

ALJ's determination that a claimant can meet the demands of work. (*Id.*) Plaintiff argues that, without further explanation of the degree and extent of any such moderate limitation, Dr. Nobel's opinion is essentially meaningless and cannot constitute substantial support for the ALJ's RFC determination. (*Id.* at 20.) Plaintiff also argues that Dr. Nobel concluded that Plaintiff retains the capacity for simple work-related tasks on a psychological basis, which does not account for the limitations to responding appropriately to supervisors and relating with coworkers or peers. (*Id.* at 20-21.)

Third, Plaintiff argues that the ALJ's Step Five determination is not supported by substantial evidence because the RFC does not properly account for Plaintiff's true limitations; thus, the resulting VE testimony is unreliable and cannot constitute substantial evidence. (*Id.* at 21-22.) Plaintiff contends that the erroneous hypothetical question posed to the VE is particularly significant in this case where the VE testified there are not many jobs that Plaintiff can perform and some of the jobs he identified in the Dictionary of Occupational Titles ("DOT") are essentially nonexistent in today's economy, with a maximum number of only 9,493 jobs. (*Id.* at 21.) Plaintiff argues that any change to the RFC could, therefore, have a significant impact in the number of jobs available. (*Id.*)

Plaintiff also argues Defendant failed to satisfy her burden of demonstrating that jobs exist in significant numbers that Plaintiff can perform because all the jobs identified accounted for less than 10,000 jobs nationally. (*Id.* at 21-22.) Plaintiff contends the VE testified that the jobs identified had very low occupational numbers and that, although

there were various jobs that may fit the RFC, some of these occupations were outdated and not practiced in high numbers. (*Id.*)

### 2. Defendant's Arguments

Defendant argues that the ALJ properly assessed the opinions of record when determining Plaintiff's RFC. (Dkt. No. 14, at 6-16 [Def.'s Mem. of Law].) Specifically, Defendant argues that the ALJ "properly exercised his discretion in resolving the evidentiary conflicts presented in the opinion evidence," "assessed an RFC that is supported by substantial evidence," and "reasonably found that Plaintiff's impairments would not preclude light work" after "carefully reviewing all the evidence in the record." (*Id.* at 8.) Defendant contends that "the ALJ's finding is fully supported by the evidence of record, which reflects completely unremarkable physical examinations, an absence of physical complaints throughout the relevant period, and the ability to perform daily activities without any difficulty." (*Id.* at 8-11.)

Regarding Dr. Jenouri's opinion indicating Plaintiff should never stoop and was limited to standing/walking for one hour each, Defendant argues that, despite this opinion, Plaintiff has failed to satisfy her burden of proving that her scoliosis resulted in any greater limitations than those already included in the RFC finding. (*Id.* at 10-11.) Defendant argues the ALJ gave Dr. Jenouri's opinions great weight because he examined Plaintiff and had professional expertise, but found that there was little support in the record for such significant limitations on standing, walking, and postural activities. (*Id.* at 11-14.) Defendant contends the ALJ incorporated all aspects of Dr. Jenouri's opinions that were credible, well-supported, and consistent with the substantial

7

evidence of record, and rejected the portions that were not while also providing reasons for this determination (including Dr. Jenouri's own examination findings, the absence of any orthopedic treatment or physical therapy, and Plaintiff's activities). (*Id.* at 12-14.) Defendant argues that it was "within the ALJ's province to not only resolve genuine conflicts of fact and thus choose between conflicting opinions or not accept all portions of a medical source's report, . . . but also to rely on what the record does not say." (*Id.* at 14.)

Turning to the mental health portion of the RFC determination, Defendant argues Plaintiff has not shown that Dr. Slowik's opined marked limitation in interacting with coworkers and supervisors is inconsistent with the RFC finding limiting Plaintiff to occasional, simple interaction with coworkers and intermittent contact with supervisors. (*Id.* at 14-15.) Defendant also argues that Dr. Nobel's opined moderate limitations in social functioning "do not necessarily preclude the ability to perform basic work activities," and that the ALJ appropriately afforded great weight to Dr. Nobel's opinion. (*Id.* at 15-16.)

Second, Defendant argues that the ALJ correctly relied on the Medical-Vocational Guidelines and VE testimony at Step Five to find Plaintiff is not disabled. (*Id.* at 16-18.) Specifically, Defendant argues that, "[w]here there is substantial evidence supporting a hypothetical question upon which a VE bases his conclusions, the VE's opinion satisfies the Commissioner's burden of showing the existence of alternative substantial gainful work that the claimant was capable of performing." (*Id.* at 17.) Regarding Plaintiff's argument that the jobs identified by the VE account for less than

8

10,000 jobs nationally and that this is not a significant number of jobs, Defendant contends that neither the regulations nor the Social Security Rulings ("SSRs") define "significant number" and that courts have held a significant number of jobs is "fairly minimal" with "numbers varying from 9,000 upwards" constituting "significant" numbers. (*Id.* at 17-18.)

### 3. Plaintiff's Reply

On reply, Plaintiff presents several responses to Defendant's arguments. (Dkt. No. 15, at 2-5 [Pl.'s Reply Mem. of Law].) First, Plaintiff reasserts that she fulfilled her burden of demonstrating disability by relying on Dr. Jenouri's opinion which concluded she cannot meet the demands of light work. (*Id.* at 2.) Second, Plaintiff again argues that the ALJ did not resolve evidentiary conflicts, but reviewed the bare medical records and substituted his own lay opinion for Dr. Jenouri's. (*Id.* at 2-4.) Third, Plaintiff maintains the ALJ erred in determining Plaintiff's RFC. (*Id.*) Fourth, Plaintiff argues Defendant cites no evidence that Plaintiff performed any of her activities at a level consistent with the ability to perform light work or that they were performed under conditions comparable with the demands of full-time light work. (*Id.* at 4-5.) Fifth, Plaintiff contends that Defendant's arguments concerning the mental RFC are unavailing because Defendant ignores the definition of "marked" as used by Dr. Slowik, indicating a serious limitation with substantial loss in the abilities to interact appropriately with the public, supervisors, and co-workers. (*Id.* at 5.) Plaintiff also argues that Defendant's own policies provide that a substantial loss in one or more of the basic mental demands of work renders a claimant disabled. (*Id.*)

## II.   LEGAL STANDARDS

A court reviewing a denial of disability benefits may not determine *de novo*
whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &
Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's
determination will be reversed only if the correct legal standards were not applied, or it
was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986
(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied
correct legal principles, application of the substantial evidence standard to uphold a
finding of no disability creates an unacceptable risk that a claimant will be deprived of
the right to have her disability determination made according to the correct legal
principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*,
615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to
"more than a mere scintilla," and has been defined as "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."  *Richardson v.
Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed
susceptible to more than one rational interpretation, the Commissioner's conclusion
must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial
evidence, a reviewing court considers the whole record, examining evidence from both
sides, because an analysis of the substantiality of the evidence must also include that
which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If
supported by substantial evidence, the Commissioner's finding must be sustained "even

10

where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of

the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord. McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III.   **ANALYSIS**

A.   **Whether Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Opinion Evidence and Plaintiff's RFC**

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient

specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The regulatory factors for considering opinions from non-treating medical sources are the same as those used in assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6). The regulations also require that the ALJ "'explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist.'" *Campbell v. Astrue*, 713 F. Supp. 2d 129, 140 (N.D.N.Y. 2010) (quoting 20 C.F.R. § 416.927(e)(2)(ii); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Here, the ALJ found that Plaintiff can perform a modified range of light work. (T. 20.) In so concluding, the ALJ considered the various opinions of record along with Plaintiff's testimony and treatment. (T. 20-23.)

## 1. The ALJ's Analysis of the Opinion Evidence

The ALJ indicated that he based the RFC on the opinions of Dr. Nobel, Dr. Slowik, and Dr. Jenouri, giving these opinions great weight. (T. 20, 80-91, 300-05, 308-30.) The ALJ also indicated that the RFC was supported by treatment notes, clinical findings throughout the record, and Plaintiff's activities of daily living. (T. 23.)

In November 2014, Plaintiff underwent a psychiatric consultative examination conducted by Mary Ann Moore, Psy.D., who observed Plaintiff was oriented and generally cooperative, with restless posture and motor behavior, coherent and goal-

13

directed thought process, at times inappropriate affect to speech and thought content, at times inappropriate mood, impaired attention and concentration due to learning issues, impaired recent and remote memory skills, below-average-to-borderline cognitive functioning, and apparently poor insight and judgment with continued depression and mood swings. (T. 293-99.) Dr. Moore diagnosed PTSD, intermittent explosive disorder, bipolar II disorder with psychotic features, personality disorder NOS with borderline features, an unspecified learning disorder, and the need to rule out borderline intellectual functioning. (T. 297.)

Dr. Moore opined Plaintiff showed no limitation with regard to following and understanding simple directions and instructions and performing simple tasks independently. (T. 296.) She opined Plaintiff had moderate limitation with regard to maintaining attention and concentration, learning new tasks and performing complex tasks independently and marked limitation with regard to appropriately dealing with stress, relating adequately to others, making appropriate work decisions and maintaining a regular work schedule. (T. 296-97.) Dr. Moore indicated that the results of the examination appeared to be consistent with psychiatric and learning/cognitive issues which might significantly interfere with Plaintiff's ability to function on a daily basis. (T. 297.)

The ALJ afforded less weight to Dr. Moore's opinion, noting it was contrary to the clinical findings of record and contrary to the other opinion evidence in the record. (T. 22.) The ALJ noted that Plaintiff had been described as engaging and appropriate with coherent and logical thought processes; motivated, pleasant, appropriate and coherent

14

with good concentration and cognitive functioning; and having a euthymic mood/affect, reality-based thought content, appropriate perceptions, good attention, good concentration and fair judgment. (T. 22, 272, 370.) The ALJ also noted Plaintiff provided extensive child care duties and reported that she had very little to no help with caring for her three children. (T. 22, 205.)

Plaintiff also underwent a consultative internal medicine examination conducted by Dr. Jenouri in November 2014. (T. 300-05.) Dr. Jenouri observed that Plaintiff appeared to be in no acute distress, she could walk on her heels and toes without difficulty, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 301.) She had a normal gait and stance, a squat of only 50 percent, minimal right convexity scoliosis, limitation in range of motion in the lumbar spine, a positive straight leg raise test (confirmed seated) on the right at 60 degrees with groin pain, bilateral tenderness to palpation at the sciatic notch, and some limitation in range of motion of the hips. (T. 301-02.) She also had physiologic and equal deep tendon reflexes ("DTRs") in the upper and lower extremities, no sensory deficits noted, full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (T. 302.) An X-ray of the lumbosacral spine showed straightening. (T. 304.) Dr. Jenouri diagnosed low back pain, scoliosis, bilateral lower extremity paresthesia, a history of depression, and mental illness. (T. 302.) He opined that Plaintiff had minimal restriction with walking, standing, and sitting for long periods; bending; stair climbing; lifting; and carrying. (*Id.*)

As part of the initial determination in December 2014, Dr. Nobel opined that Plaintiff has mild restriction in her activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. (T. 85-88.) Dr. Nobel further opined that Plaintiff has "mild to moderate functional limitations but retains the capacity for simple work-related tasks on a psych basis." (T. 88.) The ALJ afforded great weight to this opinion, observing that it was consistent with Dr. Slowik's opinion. (T. 21.) The ALJ noted that Dr. Nobel cited the clinical findings from the consultative examination in support of this opinion and that Dr. Nobel also cited old test scores. (*Id.*) The ALJ also noted that Dr. Nobel had the opportunity to review the record and had professional expertise. (*Id.*)

In February 2017, Dr. Slowik conducted a psychiatric consultative examination during which he observed that Plaintiff was oriented and cooperative, with adequate social skills, normal posture and motor behavior, coherent and goal-directed thought process, inappropriate affect to speech and thought content, limited insight, questionable judgment, mildly-impaired attention and concentration due to her difficulties with math, and mildly- to moderately-impaired recent and remote memory skills due to learning difficulties, as well as distractibility secondary to physical pain. (T. 308-18.) Dr. Slowik also indicated Plaintiff's intellectual functioning was likely between the below average and borderline range and her general fund of information appeared somewhat limited. (T. 311.) Dr. Slowik diagnosed intermittent explosive disorder and a

16

history of polysubstance abuse with the need to rule out borderline personality disorder and borderline IQ. (T. 312.)

Dr. Slowik opined that Plaintiff's ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and maintain a regular schedule was mildly limited, and her ability to learn new tasks, perform complex tasks independently, and make appropriate decisions was moderately limited. (T. 311.) Dr. Slowik also opined that Plaintiff's ability to relate adequately with others was moderately to markedly limited and her ability to appropriately deal with stress was markedly limited. (*Id.*) Dr. Slowik further opined mild limitations in the ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions; moderate limitations in the ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions; marked limitations in the ability to interact appropriately with the public, supervisors, and coworkers; and moderate limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 314-15).

Dr. Slowik indicated Plaintiff's difficulties were caused by distractibility, anger management problems, and cognitive deficits and that the results of the evaluation appeared to be consistent with psychiatric and cognitive problems which might be significant enough to interfere with the Plaintiff's ability to function on a daily basis. (T. 311-12.) She indicated that Plaintiff would need assistance to manage her funds due to her history of substance abuse. (T. 312.) Dr. Slowik also noted Plaintiff's attention was

17

mildly impaired by cognitive deficits and distractibility secondary to physical pain and her memory was mildly to moderately impaired. (T. 314.) Dr. Slowik further noted that Plaintiff's anger was easily triggered, and she had been fired for physical aggression toward a coworker, showing no remorse for her actions. (T. 315.)

The ALJ afforded great weight to Dr. Slowik's opinion, noting she had the opportunity to examine Plaintiff and she had professional expertise. (T. 21.) The ALJ noted that Dr. Slowik's examination was generally consistent with other records. (T. 21, 370, 397.) The ALJ also noted that Plaintiff was able to shop, manage money, provide childcare, and read. (T. 21.) The ALJ indicated that, although Dr. Slowik found marked limitations in interacting with others, these limitations had been considered and accounted for in the RFC which would require only minimal interaction with others. (*Id.*)

Dr. Jenouri conducted a second consultative internal medicine examination in February 2017. (T. 319-30.) Dr. Jenouri observed that Plaintiff appeared to be in no acute distress, she could walk on her heels and toes without difficulty, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. (T. 320.) She had a normal gait and stance, a full squat, some limitation in range of motion in the lumbosacral spine, a positive straight leg raise test on the right at 30 degrees (not confirmed seated), minimal mild scoliosis with right convexity, some limitation in range of motion in the hips, physiologic and equal DTRs in the upper and lower extremities, no sensory deficits, full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally.

(T. 320-21.)  Dr. Jenouri diagnosed low back pain, bilateral lower extremity radiculopathy, and a history of anxiety, PTSD, and depression.  (T. 321.)

Dr. Jenouri opined that Plaintiff had minimal to mild restrictions with walking, standing for long periods, bending, and stair climbing.  (T. 322.)  He contended that Plaintiff could continuously lift and carry up to ten pounds, frequently lift and carry up to 20 pounds, occasionally lift and carry up to 50 pounds, sit for two hours at a time for a total of six hours, stand for one hour at a time for a total of one hour, and walk for one hour at a time for a total of one hour.  (T. 323-24.)  She could frequently use her hands for reaching, handling, fingering, feeling and pushing/pulling; frequently use her left foot for the operation of foot controls; occasionally use her right foot for operation of foot controls; occasionally climb stairs and ramps; and never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl.  (T. 325-26.)  Dr. Jenouri also opined that Plaintiff could occasionally tolerate operating a motor vehicle, humidity/wetness, pulmonary irritants, extreme cold/heat and vibrations, but could never tolerate unprotected heights or moving mechanical parts.  (T. 327.)  She could tolerate moderate noise.  (*Id.*)  Dr. Jenouri indicated Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces.  (T. 328.)

The ALJ afforded great weight to Dr. Jenouri's opinions.  (T. 21.)  The ALJ indicated that, although Dr. Jenouri's second opinion was somewhat consistent with the record, including his own findings and narrative, there was little support in the record for such significant limitations on standing, walking, and postural activities.  (T. 20-21.)  The ALJ noted Plaintiff that was engaged in extensive child care duties and there was

evidence she walked to at least one consultative examination. (T. 21, 308.) The ALJ also noted Plaintiff had not seen an orthopedic specialist, participated in physical therapy, nor had surgery on her back. (T. 21.) The ALJ indicated that Dr. Jenouri had the opportunity to examine Plaintiff, had professional expertise, and that his earlier opinion, narrative opinion and parts of his later opinion were consistent with the record. (T. 21.)

### 2. The Court's Analysis

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. (Dkt. No. 11, at 11-21 [Pl.'s Mem. of Law]; Dkt. No. 15, at 2-5 [Pl.'s Reply Mem. of Law].) The Court finds these arguments unpersuasive for the following reasons. First, the ALJ's analysis and resulting RFC indicate sufficient consideration of the various medical opinions, the medical evidence pertaining to Plaintiff's impairments and treatment, and Plaintiff's testimony. (T. 20-23.) In his decision, the ALJ indicated that he had considered Plaintiff's symptoms based on the requirements of 20 C.F.R. § 416.929 and SSR 96-4p and had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 20.) The ALJ's RFC analysis includes a detailed summary of the opinions of evidence and Plaintiff's alleged impairments and related limitations. (T. 20-23.)

Second, the ALJ's analysis provides sufficient consideration of the opinions of record and specific reasons for the weight afforded to each, as summarized above, reasons which the Court finds are supported by the objective evidence of record. (T. 20-22.) Plaintiff argues that the ALJ substituted his opinion for that of the medical

20

sources and improperly failed to cite to contrary evidence in discounting portions of the various opinions. (Dkt. No. 11, at 11-16 [Pl.'s Mem. of Law]; Dkt. No. 15, at 2-4 [Pl.'s Reply Mem. of Law].) However, it was within the ALJ's purview to resolve material conflicts in the evidence and various opinions of record. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). This Court will not now reweigh the evidence that was before the ALJ. *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

Further, the ALJ's resolving such conflicts in the medical evidence is not interpreting raw medical data or substituting his own lay opinion for that of a medical professional. *See Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendation adopted* 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (noting that, although it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is

within the ALJ's power to resolve conflicts in the medical record).  Again, the ALJ's analysis of the medical and opinion evidence of record indicates a detailed review of such evidence with sufficient explanation to support the RFC determination.

Third, the ALJ was not required to accept every opined limitation from consultative examiner Dr. Jenouri.  *Kitka v. Comm'r of Soc. Sec.*, 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) ("There is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner.") (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (summary order)).  Further, the RFC does not have to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to one portion of a treating physician's opinion but not to another portion). Plaintiff argues that the ALJ failed to sufficiently explain why he rejected Dr. Jenouri's opined limitations in standing, walking, and stooping, but the Court is unpersuaded.  As summarized above, the ALJ clearly articulated his reasons for finding that Dr. Jenouri's significant limitations on standing, walking, and postural activities were not supported by the record.  (T. 21.)

Plaintiff's arguments regarding the mental portion of the RFC are not persuasive for similar reasons.  (Dkt. No. 11, at 16-19 [Pl.'s Mem. of Law]; Dkt. No. 15, at 5 [Pl.'s

Reply Mem. of Law].)  Plaintiff argues the ALJ erred insofar as he contended that Dr.

Slowik's opined marked limitation in interacting with others was sufficiently accounted

because the RFC limited plaintiff to minimal interaction with others.  (*Id.*)  However, the

Court notes that the ALJ's analysis supports this conclusion by indicating not only that

Dr. Slowik's opined marked limitations were accounted for but had also been

considered.  (T. 21.)  Indeed, the ALJ's decision and RFC determination indicate that

the ALJ closely considered Plaintiff's alleged mental impairments and related limitations

in conjunction with reviewing the evidence of record.  (T. 20-23.)  The Court notes that

the RFC determination does not indicate just "minimal interaction," but explains that

Plaintiff should only have "occasional, simple interaction with coworkers," "she should

not have interaction with the public," and "intermittent contact with supervisors

throughout the workday."  (T. 20.)  Again, the ALJ was not required to match every

limitation in the RFC to a medical opinion and he appropriately weighed the opinions of

record to determine Plaintiff's RFC.  *Matta*, 508 F. App'x at 56.

Finally, Plaintiff also argues that Dr. Nobel's opinion cannot constitute substantial

support for the RFC because the term "moderate" was not sufficiently defined or

explained.  (Dkt. No. 11, at 19-20 [Pl.'s Mem. of Law].)  However, the Court notes that,

even absent a clear definition of "moderate," Dr. Nobel concluded that Plaintiff retained

the capacity for simple work-related tasks "on a psych basis" despite her mild-to-

moderate functional limitations.  (T. 88.)  Further, the ALJ's mental RFC determination is

not based solely on Dr. Nobel's opinion or Dr. Slowik's, but on both opinions as well as

the ALJ's review of the treatment notes and clinical findings throughout the record.  (T.

23

20-23.)  The Court notes that "[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such" and this Court will not now reweigh that evidence.  *Bliss*, 2015 WL 457643, at *7; *Lewis*, 122 F. Supp. 3d at 7.  For the reasons outlined above, the ALJ's analysis of the opinion evidence as well as the resulting RFC are supported by substantial evidence.  Remand is therefore not required on these bases.

## B.    Whether Substantial Evidence Supports the ALJ's Step Five Finding

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre*, 758 F.3d at 151 (citing 20 C.F.R. § 404.1520(a)(4)(v)). "'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'" *Rosa v. Colvin*, 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (quoting *Fox v. Comm'r of Soc. Sec.,* 02-CV-1160 (FJS/RFT), 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)). "[O]ther courts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding." *Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868, 2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) (citing *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015)).

After determining the RFC, the ALJ found that Plaintiff has no past relevant work. (T. 23.) The ALJ then found, based on the VE's testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy, including agricultural produce sorter (with 1,550 in the national economy), riveting machine operator II (with 1,151 jobs in the national economy), cleaner and polisher (with 5,593 jobs in the national economy), and gluer (with 1,199 jobs in the national economy). (T. 23-24, 72-73.) Plaintiff argues that the ALJ's Step Five determination is not supported by substantial evidence because the RFC does not properly account for Plaintiff's true limitations and, thus, the resulting VE testimony is unreliable and cannot constitute substantial evidence. (Dkt. No. 11, at 21-22 [Pl.'s Mem. of Law].) The Court finds these arguments persuasive in part for the following reasons.

25

As an initial matter, contrary to Plaintiff's contention that the ALJ's hypothetical question to the VE was erroneous because it did not properly account for Plaintiff's true limitations, the Court finds that the hypothetical question posed to the VE accurately reflected the ALJ's RFC determination, which the Court has already found to be supported by substantial evidence for those reasons discussed in this Memorandum-Decision & Order.  However, Plaintiff also contends that Defendant failed to satisfy her burden of demonstrating that jobs exist in significant numbers that Plaintiff can perform because the jobs identified collectively accounted for less than 10,000 jobs nationally. (Dkt. No. 11, at 21-22 [Pl.'s Mem. of Law].)  The Court's review of the record lends credence to Plaintiff's argument.  Indeed, the four jobs identified by the VE constitute a total of only 9,493 jobs in the national economy.  (T. 23-24, 72-73.)  The Court is troubled that although the VE identified four job titles, this number is still below 10,000 jobs in the national economy and that, especially given these low numbers, the VE did not identify the regional numbers for jobs available to Plaintiff.  *Waldvogel*, 2017 WL 3995590, at *13; *Hamilton*, 105 F. Supp. 3d at 229-31.  Further, although the VE testified that there were quite a few jobs meeting the parameters of the hypothetical question, he indicated that "[s]ome of these occupations are outdated, and not practiced in high numbers[.]"  (T. 73.)  The Court is therefore not convinced, based on the evidence of record, that the Commissioner has demonstrated that there exists a significant number of jobs available to Plaintiff in the national economy.  Thus, remand is required on this basis.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is

    **ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

    **ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

    **ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g), for proceedings consistent with this Decision and Order.

    **IT IS SO ORDERED.**

Dated: March 21, 2019
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge